UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LENNAR PACIFIC PROPERTIES MANAGEMENT, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:07-CV-1411-G |
| DAUBEN, INC. d/b/a TEXAS INTERNATIONAL PROPERTY ASSOCIATES, | ) ) ) ) ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiffs, Lennar Pacific Properties Management, Inc. ("Pacific") and Lennar Corporation ("Lennar") (collectively, "the plaintiffs") for a temporary restraining order, preliminary injunction and permanent injunction. For the reasons set forth below, the plaintiffs' motion for temporary restraining order is granted.

### I. BACKGROUND

This trademark dispute arises from the defendant Dauben, Inc.'s ("Dauben") registration and use of the domain name "MYLENNAR.COM". Lennar Corporation,

founded in 1954, has built over 700,000 family homes in communities across the country, and has used the trademark "LENNAR" continuously since 1973. *See* Plaintiffs' Original Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction ("Plaintiffs' Complaint") ¶ 4. The LENNAR mark has been used extensively in the real estate business, including real estate management and brokering, management of residential communities, etc., and the LENNAR mark has become recognized among consumers and members of the trade as identifying Lennar as the source of goods and services bearing the LENNAR mark. *Id.* ¶¶ 6-7. Lennar is the owner of U.S. Registrations Nos. 2,606,292 and 3,108,401 issued by the United States Patent and Trademark Office for the LENNAR mark. *Id.* ¶ 8.

The plaintiffs allege that the defendant's registration and use of the MYLENNAR.COM domain, without the plaintiffs' consent, has caused and will continue to cause the plaintiffs harm. When an internet user or consumer types in the domain name "MYLENNAR.COM" into a web browser or search engine, the user is directed to a website set up by the defendant that resembles a search page. *Id.* ¶¶ 12-13. The plaintiffs claim that the defendant's website has caused confusion and mistake among consumers as to the source, sponsorship, and approval of the defendant's goods and services with those of Lennar. *Id.* ¶ 23.

## II. ANALYSIS

### A. *Ex Parte*

FED. R. CIV. P. 65(b) provides that courts may grant a TRO "without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required." FED. R. CIV. P. 65(b).

The plaintiffs have met the requirements of Rule 65(b), asserting that upon notification to the defendant of the filing of the underlying suit there arises a significant risk (1) of imminent removal of the ownership of the MYLENNAR.COM domain name beyond the confines of the jurisdiction, and (2) that defendant would otherwise transfer the domain name to other registrars and/or registrants during the pendency of the action, such that giving notice of the application for injunction could result in the inability to provide any relief. *See* Declaration of Steven E. Lane ¶ 1.

### B. Temporary Restraining Order

To obtain a temporary restraining order, a plaintiff must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial

threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) granting the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). The decision to grant or deny injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760 F.2d 618, 621 (5th Cir. 1985). Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried its burden of persuasion on each of the four factors. *Id.*; *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citations omitted).

The plaintiffs seek injunctive relief on the grounds that the defendant is unlawfully using marks owned by the plaintiffs. *See* Plaintiffs' Complaint ¶ 49.

1. *Likelihood of Success*

When determining the likelihood of success on the merits, the court looks to the standards of the substantive law. See *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). To obtain an injunction, the movant's likelihood of success must be more than negligible, *Compact Van Equipment Company, Inc. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless the question presented by the litigant is free from doubt, *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.), *cert. denied*, 375 U.S. 829 (1963). As

the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial likelihood of success factor may decrease.  See *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Company*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.").

As noted above, the plaintiffs seek injunctive relief on trademark infringement grounds.  *See* Plaintiffs' Complaint ¶ 49.  Regarding the plaintiffs' claims under the Lanham Act, Lennar owns two trademarks which identify and distinguish Lennar's services from other builders and brokers in the market.  *See* Plaintiffs' Complaint ¶¶ 4-8.  Unauthorized use of these marks is clearly a violation of the Lanham Act.  *See* 15 U.S.C. §§ 1114(1).  Because defendant Dauben continues to maintain and operate the MYLENNAR.COM website, and because of the likelihood of confusion amongst users and consumers online, Lennar is likely to succeed on its Lanham Act cause of action.  *See* Plaintiffs' Complaint ¶¶ 33-36.

2. *Irreparable Injury*

An irreparable injury is one that cannot be remedied by an award of economic damages.  *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).  Because the defendant continues to maintain and operate the MYLENNAR.COM website, thereby infringing upon Lennar's trademark rights, and because trademark infringement is, as a matter of law, an irreparable injury, the

plaintiffs have satisfied this prong for their trademark infringement claim. See *Zyvex Corporation v. Starkewolfe*, 2002 WL 1359719 at *3, No. 3:02-CV-0190-G (N.D. Tex. June 18, 2002).

### 3. *The Threatened Injury*

Next the plaintiffs must show that the injury they will suffer if the court denies the temporary restraining order is greater than the injury the defendant will suffer if the order is granted. If the defendant is permitted to continue using marks owned by the plaintiffs, the defendant will profit from the goodwill the plaintiffs have established through years of promoting their marks. *See* Plaintiffs' Complaint ¶ 22. Such a misappropriation of the marks and the plaintiffs' goodwill constitutes a substantial injury.

If the plaintiffs' motion for injunctive relief is granted, the defendant will be prohibited from the use, cancellation, or transfer of the MYLENNAR.COM domain name to any person or entity other than Lennar, as well as the use, registration, or trafficking in any domain name incorporating the LENNAR mark or a domain name confusingly similar to the LENNAR mark. In short, the defendant's web site will be out of business. While it is unclear exactly how much of the defendant's online business is derived from the improper use of the plaintiffs' mark, it appears likely that the improper use of the LENNAR marks is a significant contributing factor.

Accordingly, it is clear that the injury to the plaintiffs' outweighs the potential injury to the defendants.

### 4. *The Public Interest*

Finally, the plaintiffs' have shown that granting the temporary restraining order will not disserve the public interest. *See* Plaintiffs' Complaint ¶ 54. Indeed, the public interest is served by terminating the improper use of trademarks and making such misconduct unprofitable so that the public will not be deceived or confused as to the source or sponsorship of the goods and services they consume. See *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002), *cert. denied*, 540 U.S. 814 (2003).

### III. CONCLUSION

For the reasons stated above, the plaintiffs' motion for temporary restraining order is **GRANTED** for ten days. The defendants are immediately restrained from the following activities: (i) using, cancelling, or transferring the MYLENNAR.COM domain name to any person or entity other than Lennar; (ii) using, registering, or trafficking in any domain name incorporating, in any way, the LENNAR mark and (iii) using, registering, or trafficking in any domain name confusingly similar to the LENNAR mark.

This order shall not be effective until the plaintiffs execute and file with the clerk of this court a bond in conformity with FED. R. CIV. P. 65(c) in the amount of

$1,000.00. Upon the plaintiffs' filing of this bond, the clerk of this court shall issue a temporary restraining order in conformity with the law and the terms of this memorandum opinion and order.

A hearing will be held on this matter on **Friday, August 24, 2007** at **10:30 a.m.**

**SO ORDERED**.

August 16, 2007.

_____
A. JOE FISH
CHIEF JUDGE